FILED

98 JUL -9 AM 11:03

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUL 9 1998

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PETE B. GULAS, }
}
    Plaintiff, }
} CIVIL ACTION NO.
vs. }
} CV-97-AR-0719-S
BP EXPLORATION & OIL, INC., }
}
    Defendant. }

**MEMORANDUM OPINION**

    The above-entitled action is before the court on a motion for summary judgment filed by defendant, BP Exploration & Oil, Inc. ("BP"). Plaintiff, Pete B. Gulas ("Gulas"), alleges that BP failed to promote him because of his age. In a related claim, Gulas also alleges that BP subjected him to disparate treatment in discipline. Gulas brings both claims pursuant to the Age Discrimination in Employment Act of 1967, *as amended*, 29 U.S.C. §§ 621 *et seq.* ("ADEA"). For the reasons that follow, the court now concludes that BP is deserving of the relief sought.

### I. *Pertinent Undisputed Facts*

    BP hired Gulas in June 1994 as a "customer service representative" ("CSR") or cashier for one of its retail gas stations in Birmingham, Alabama. At the time Gulas went to work for BP, he was sixty-seven (67) years old. On September 2, 1995,

38

BP promoted Gulas to the position of "Senior CSR" and gave him an 18¢ per hour raise.

According to Gulas, not long after he came to work for BP in 1994, he received three months of management training. Gulas says that, at the end of this training, a manager at BP told him that he "had a good chance to become a manager." *Def.'s Exh. 1* at 82. However, aside from this initial conversation, Gulas does not recall having any other conversations about possible promotions with anyone at BP. In fact, neither Gulas's last supervisor nor his last district manager recalls his expressing any interest in being promoted to management while he worked for them. *Def.'s Exh. 3* at 28; *Def.'s Exh. 2* at 25-26, 99.

As a part of its quality control efforts, BP utilizes a "Mystery Shop" program for its retail gas stations. With the "Mystery Shop" program, a person posing as a shopper makes random visits to BP stations and grades certain aspects of station conditions and employee performance. BP expects its employees to receive scores of 95/100 in "service" and 97/100 in "housekeeping." A score of less than eighty-five (85) results in termination. BP contracts with an outside firm to administer the program and has no control over the program.

On November 11, 1996, Gulas received a "Mystery Shop" score of less than eighty-nine (89). At that time, BP's policy was to

2

discipline employees who scored less than ninety (90) with a one-week suspension without pay. As a result of his score, Gulas received a one-week suspension without pay on or about December 1, 1996.

On or about December 10, 1996, Gulas filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In this charge, Gulas alleged that BP failed to discipline younger employees who received "Mystery Shop" scores of less than eighty-five (85). Gulas filed the instant action on March 21, 1997, and he resigned his employment at BP in or around May 1997. Gulas filed a second EEOC charge on or about September 19, 1997. In his second EEOC charge, he alleged that he was denied a series of promotions because of his age.

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P. In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Turnes v. AmSouth*

3

Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). In determining the existence of a genuine issue of material fact, the court is obliged to review the record and all its inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356 (1986). BP has invoked Rule 56.

### III. *Discussion*

As a preliminary matter, the court pauses to note that Gulas failed to file a timely response to BP's motion for summary judgment. Moreover, Gulas did not attempt to get an extension of time in which to file his response until approximately thirty (30) minutes before his response was due, and, then, he did so only via the telephone.[1] Accordingly, the court has not given any consideration to Gulas's untimely opposition materials in evaluating the merits of BP's motion. Nevertheless, as noted above, this court is fully cognizant of its obligation under Rule 56, Fed.R.Civ.P., to consider the evidence that has been submitted in light most favorable to Gulas, and it will do so.

---

[1] Subsequently, Gulas filed a motion for leave to file his opposition material out of time. However, the court denied that motion because it failed to demonstrate excusable neglect as required by Rule 6(b), Fed.R.Civ.P.

### A. Gulas's ADEA Claims

Gulas brings two claims pursuant to the ADEA. First, he alleges that BP failed to promote him because of his age. Second, he alleges that he experienced disparate treatment in workplace discipline because of his age. The court will address each claim in turn.

#### 1. Failure to Promote

Gulas alleges that BP denied him promotions on four separate occasions. More specifically, Gulas claims that, as a result of age-based discrimination, he failed to receive promotions to positions awarded to Derek Jamison, Kristy Killin, Jill Rice, and Timothy Schmitz. In response, BP contends that all of these claims are time-barred. The court agrees.

To bring a claim under the ADEA, an employee must file a charge of discrimination with the EEOC within 180 days of the challenged employment action. 29 U.S.C. § 626(d)(1). In effect, this requirement acts like a statute of limitations, and it shields an employer from liability for any allegedly improper employment practice occurring more than 180 days prior to the filing of the EEOC charge. *McBrayer v. City of Marietta*, 967 F.2d 546, 547 (11th Cir. 1992); *Larkin v. Pullman-Standard Div., Pullman Inc.*, 854 F.2d 1549, 1561-62 (11th Cir. 1988), *vacated on other grounds sub nom., Swint v. Pullman-Standard*, 493 U.S. 929,

5

110 S.Ct. 316 (1989). Therefore, given that Gulas did not file his EEOC charge alleging discriminatory promotional practices until September 9, 1997,[2] any claim regarding an incident of alleged discrimination occurring before March 1997 is untimely. It is undisputed that, of Gulas's promotion claims, all of the challenged decisions occurred before March 1997.[3] As such, the court cannot allow Gulas to proceed on any of his said claims. *See Burnam v. Amoco Container Co.*, 755 F.2d 893, 895 (11th Cir. 1985) (holding that, where plaintiff files EEOC charge of age discrimination more than 180 days after challenged employment action, ADEA claim is time-barred).

### 2. *Disparate Treatment in Discipline*[4]

---

[2] Gulas did file an earlier EEOC charge in December 1996. However, that charge does not reference any discriminatory promotional practices by BP. Rather, the December 1996 EEOC charge merely alleges disparate treatment in discipline. In the court's view, it is unreasonable to expect that an EEOC investigation of Gulas's charge regarding discriminatory workplace discipline should grow to include an investigation of BP's promotional practices. Indeed, the record clearly demonstrates that the EEOC made no effort to investigate BP's promotional practices as a result of the December 1996 charge. *Def.'s Exh.* 5 at ¶ 14. Consequently, Gulas's September 1997 EEOC charge does not constitute an amendment of his earlier EEOC charge or trigger the EEOC relation-back regulation so as to make promotion claims timely. 29 C.F.R. § 1601.12(b) (1997).

[3] Derek Jamison, Kristy Killin, Jill Rice, and Timothy Schmitz received their promotions to Manager-In-Training on July 22, 1996, October 10, 1995, February 3, 1996, and May 13, 1995, respectively. As one can plainly see, all of the challenged promotions occurred long before September 9, 1997.

[4] In addition to claiming that he experienced disparate treatment in discipline as a result of the "Mystery Shop" program, Gulas claims that BP used that program to harass him. BP makes a cogent argument to rebut this claim. However, given that Gulas's complaint makes no mention of harassment whatsoever, the court need not reach the merits of that argument. Rather, under such circumstances, the court elects to dismiss Gulas's purported claim of harassment summarily.

Gulas also alleges that his one-week suspension for failing to receive a passing score on his November 11, 1996, "Mystery Shop" evaluation was the product of age-related animus. More specifically, Gulas claims that BP did not discipline younger employees who received failing "Mystery Shop" scores. In response, BP argues that Gulas cannot meet his prima facie burden. This argument is well taken.

The Supreme Court of the United States first articulated the prima facie case for disparate treatment in employment settings in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). The Court later refined this standard in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981). Over the years, courts have adapted the *McDonnell Douglas-Burdine* model to analyze varying types of employment discrimination claims. For example, in order to make out a prima facie case for disparate treatment in workplace discipline, an employee must demonstrate: (1) that he is a member of the class protected by the ADEA; and either (2) that he did not violate the work rule in question; or (3) that he engaged in misconduct similar to that of a person outside the protected class and that the disciplinary measures taken against him were more severe than those taken against the younger employee. *Cf. Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989)

(articulating prima facie standard in Title VII context). If Gulas establishes a prima facie case for disparate treatment in workplace discipline, then the burden of production shifts to BP to establish evidence of a legitimate, nondiscriminatory reason that explains why it took the employment action that it did. *Wisdom v. M.A. Hanna Co.*, 978 F. Supp. 1471, 1476 (N.D.Ga. 1997). Finally, if BP meets this exceedingly light burden, then the burden shifts to Gulas to show that the reason given by BP is, in fact, a pretext for age discrimination. *Id*.

Although it is undisputed that Gulas falls within the class of persons protected by the ADEA. However, the record clearly demonstrates that Gulas violated the work rule in question. In 1996, if a CSR received a "Mystery Shop" score of less than ninety (90), BP's policy at that time was to give that employee a one-week suspension without pay. *Def.'s Exh.* 2 at 75. Gulas admits in his first EEOC charge that, in November 1996, he received a "Mystery Shop" score of less than eighty-nine (89). *Exh. H to Def.'s Exh.5.* Therefore, in order for Gulas to satisfy his prima facie burden, he must demonstrate that he received more severe treatment than employees from without the protected class who violated the same work rule.

While Gulas asserts that there were younger BP employees who received "Mystery Shop" scores below ninety (90) and who went

8

undisciplined, there is nothing in the record to substantiate that charge. Indeed, the evidence strongly suggests that, during the month that BP suspended Gulas, it also suspended at least two other employees, both below the age of forty (40), who failed to receive a score of ninety (90) or better on their "Mystery Shop" evaluations. *Def.'s Exh. 2* at 112-13; *Exh. 6 to Def.'s Exh. 2*. Absent any evidence to support an essential element of Gulas's disparate discipline claim, summary judgment is the proper disposition. Conclusory allegations do not substitute for evidence. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). Therefore, Gulas's claim for disparate treatment in workplace discipline is due to be dismissed as a matter of law.

### IV. *Conclusion*

The court will enter a separate and appropriate order consistent with the conclusions reached hereinabove.

DONE this 9th day of July, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE